UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KIM PECK, an individual, | Case No. 1:14-cv-00500-BLW |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| THE CINCINNATI INSURANCE COMPANY, an Ohio Corporation, | |
| Defendant. | |

## INTRODUCTION

Pending before the Court are Defendant Cincinnati Insurance Company's Motion for Summary Judgment (Dkt. 33) and Plaintiff Kim Peck's Motion for Leave to Amend to Add a Claim for Punitive Damages (Dkt. 32). Having reviewed the record in this case and considering the arguments of the parties, the Court finds that oral argument is not needed. The Court addresses each motion below.

## FACTS

This is an insurance case concerning a water loss event at a Boise, Idaho hotel and condominium building (the "Grove"). Ms. Peck owns a condominium unit at the Grove, unit 1403 ("1403"). Complaint at ¶ 5, Dkt. No. 1-1; Peck at 14; Peck EUO at 19, Dkt. 35-

1. Plaintiff's unit 1403 is part of the Grove's condominium homeowners association ("HOA"). Complaint at ¶ 8, Dkt. No. 1-1.

The Cincinnati Insurance Company ("Cincinnati") issued a property insurance policy (the "Grove Policy"), number CAP 5219615, to the HOA and the hotel ("Block 22"), effective March 31, 2012 through March 31, 2013. Orgill Dec. at ¶ 9, Dkt. 38-1. The Grove Policy provided, *inter alia*, property damage coverage to Block 22, a hotel investment group, and the HOA for a shared Boise, Idaho hotel and condominium building ("the Grove"). On the HOA's part, the Grove Policy covers the walls, floors, ceilings, fixtures and affixed finishings of the Grove. H&R at 25-26; 35, Dkt. 35-5. The Grove Policy does not cover the condominium unit owners' personal property or alternative living expense ("ALE"). H&R at 26, Dkt. 35-5. Pursuant to its bylaws, the HOA receives any proceeds of the Grove Policy and determines the amount of proceeds to apportion to units of the HOA. Members of the HOA are bound by the HOA's apportionment determinations. HOA at Ex. 6, Dkt. 35-3.[1]

Cincinnati issued policy number C01 0620671 to Plaintiff Kim Peck, effective April 12, 2013 through April 12, 2014 (the "Peck Policy"). Orgill Dec. at ¶ 10, Dkt. 38. The Peck Policy provides property and liability coverage to unit 1403.

In October 2012, a substantial quantity of water was discharged from a fire sprinkler on the 15th floor at the Grove as a result of a lit candle. Passmore at 30-31, Dkt. 36-1; Thomann at 26, Dkt. 36-2; Korondi Dec. at ¶ 7, Dkt. 34-1. The HOA and Block 22

---

[1] The Grove Homeowners Association's Rule 30(b)(6) designee ("HOA").

**MEMORANDUM DECISION AND ORDER - 2**

submitted claims under the Grove Policy. HOA at 8, Dkt. 35-3; Block 22 at 18-19, Dkt.

35-4. Ms. Peck submitted claims under the Peck Policy. Peck EUO at 6-7, Dkt. 35-1.

    **A.**    **Block 22 Claim**

Block 22 submitted a claim to Cincinnati under the Grove Policy for the loss.

Block 22 at 18-19, Dkt. 35-4. Cincinnati paid $1,753,482.78 to Block 22 for this claim.

Orgill Dec. at ¶ 6, Dkt. 38. Block 22's President John Cunningham testified that Block 22

was paid everything it had coming to it from Cincinnati. Block 22 at 31-32, Dkt. 35-4.

Block 22 testified that Cincinnati addressed its claim appropriately and reasonably; that it

had no complaints about Cincinnati's response; that it received what it was entitled to

under the policy; that Cincinnati was diligent and responsive and that it caused no delay.

Block 22 at 34-35, Dkt. 35-4.

    **B.**    **HOA Claim**

The HOA submitted a claim to Cincinnati under the Grove Policy for the water

loss. HOA at 8, Dkt. 35-3. Cincinnati paid $1,573,538.53 to the HOA for this claim.

HOA at 10, Dkt. 35-3; HOA at Ex. 2, Dkt. 35-3; Orgill Dec. at ¶ 7, Dkt. 38. Of that

amount, the HOA apportioned $96,920.91 to 1403. HOA at 12, Dkt. 35-3; HOA at Ex. 2,

Dkt. 35-3. Of that amount, $84,937.44 has been paid to Ms. Peck. HOA at 12, Dkt. 35-3;

HOA at Ex. 2, Dkt. 35-3. The balance is being held by the HOA for future work to be

done at its expense in 1403. HOA at 12, Dkt. 35-3.

The HOA retained RestCon to provide consultation services as to the health

and safety concerns involved in remediation of the Grove. HOA at 25-26, Dkt. 35-3.

Restcon performed numerous tests and inspections at the Grove, including several times

at 1403. Passmore at 82, Dkt. 36-1. RestCon then developed reports with recommendations as to the scope of remedial work. Passmore at 88, Dkt. 36-1; Thomann at 43-46, 56-59, 74-75, Dkt. 36-2. Aside from its final report, all recommendations by RestCon were implemented by the contractors. Cincinnati maintains that it never impeded RestCon throughout the restoration process. Passmore at 88-90, 94-95, Dkt. 36-1; Thomann at 88-89, Dkt. 36-2. Cincinnati paid all of RestCon's bills, and the HOA testified that Cincinnati has paid all amounts submitted for the loss. HOA at 44; 62-64, Dkt. 35-3.

### C.      Peck Personal 1403 Claim

Ms. Peck submitted a total of three claims under the Peck Policy. Peck EUO at 6-7, Dkt. 35-1. One for 1403, and two concerning her subsequent temporary housing ("Royal Plaza" and "Reese Street"). Peck EUO at 6-7, Dkt. 35-1.

Approximately one week after the water loss, Ms. Peck moved out of 1403. Peck EUO at 43, Dkt. 35-1. Ms. Peck then moved to a series of temporary residences. Cincinnati paid Ms. Peck's additional living expenses with respect to these locations until the $80,000 limit of liability for ALE coverage under the Peck Policy was exhausted. Peck at 22, 25, 40, Dkt. 35-2; Peck EUO at 65-66, Dkt. 35-1; Korondi at ¶ 20, Dkt. 34.

Cincinnati paid Ms. Peck for all sums claimed by her that it determined to be a covered loss. Korondi Dec. at ¶ 10, Dkt. 34. Ms. Peck has admitted that the actual damage to 1403 is being paid by the Grove Policy, not the Peck Policy. Peck EUO at 40-41, Dkt. 35-1.

### D.      Claims Processing

During the development of this claim, both parties experienced delay due to the complex nature of the claim and the acts of third parties. Korondi Dec. at ¶ 11, Dkt. 34. For example, beginning in January 2013, Peter Korondi, Cincinnati's independent adjustor, made multiple requests of Belfor for estimates of contents cleaning costs. Korondi Dec. at ¶ 11, Dkt. 34. Belfor's estimate was an important part of the process of determining those costs. Korondi Dec. at ¶ 11, Dkt. 34. Korondi then directed multiple follow-up communications to Belfor over several months because the estimate did not arrive. Korondi Dec. at ¶ 11, Dkt. 34. Some of these communications were by telephone. Korondi Dec. at ¶ 11, Dkt. 34. By email dated June 21, 2013 from Belfor, Korondi was told that it had been instructed by Peck not to communicate with him about this. Korondi Dec. at ¶ 11 and Ex. 1, Dkt. 34.

During the development of this claim, Cincinnati experienced delay related to Dr. Passmore's work. Korondi Dec. at ¶ 13, Dkt. 34. Each of the many sampling events she conducted required a cessation of work for the sampling to occur. Korondi Dec. at ¶ 13, Dkt. 34. There would then be days or weeks before sampling data returned from the laboratory. Korondi Dec. at ¶ 13, Dkt. 34. Thereafter, Dr. Passmore would specify work based on the sampling results. Korondi Dec. at ¶ 13, Dkt. 34.

During the development of this claim, delay was caused by Western Heating & Air, a subcontractor of Belfor. Korondi Dec. at ¶ 14, Dkt. 34. Western was brought in to clean air ducts including those in Peck's unit. *Id.*; Belfor at 141-43, Dkt. 35-6. It fogged the ducts with a solution that was primarily water, then sealed the ducts. *Id.* This promoted mold growth that then had to be addressed. *Id.*

## LEGAL STANDARD

**1.    Motion for Summary Judgment.**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case."  *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings.  *Id.* at 255.  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

2001) (en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor.  *Deveraux*, 263 F.3d at 1076.  The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists.  *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted).   Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Only admissible evidence may be considered in ruling on a motion for summary judgment.  *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(e).  Statements in a brief, unsupported by the record, cannot be used to create a factual dispute.  *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).  The party opposing summary judgment must explain how the facts are in controversy creating "a genuine issue for trial." *British Motor Car Distrib. Ltd. v. San Francisco Auto. Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir.1989). Notably,

"if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c) or Local Rule 7.1(b)(1) or (c)(2), the Court nonetheless may consider the uncontested material facts as undisputed for purposes of consideration of the motion, and the Court may grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the moving party is entitled to the granting of the motion." Dist. Idaho Loc. Civ. R. 7.1(e)(2).

## ANALYSIS

**1.      Defendant's Motion for Summary Judgment.**

Plaintiff's complaint alleges claims for breach of contract, bad faith, negligence and estoppel. Complaint, Dkt. 1-1. Cincinnati has moved for summary judgment on all claims. For the reasons more fully stated below, Cincinnati's Motion for Summary Judgment on all claims is GRANTED.

### A.      Breach of Contract – Grove Policy

Defendant argues that Ms. Peck lacks standing to assert a claim against Cincinnati under the Grove Policy because she is not a party to the contract or an intended third-party beneficiary.

The Court agrees. "It is axiomatic in the law of contract that a person not in privity cannot sue on a contract"; "'[p]rivity' refers to 'those who exchange the [contractual] promissory words or those to whom the promissory words are directed." *See Wing v. Martin,* 107 Idaho 267, 688 P.2d 1172, 1177 (Idaho 1984) (citations omitted). Peck herself concedes that she was not a named insured on the Grove Policy. Peck Opposition,

at 3, Dkt. No. 45; *see also* Complaint at 5, ¶ 8, Dkt. 1-1. The Grove Policy is a bilateral contract between Cincinnati and its Named Insureds, the HOA and Block 22. As such, Peck has no standing to sue as a party to that contract.

Nor can Peck rely on standing through a theory of third-party beneficiary status. "To sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999), opinion amended on denial of reh'g, 203 F.3d 1175 (9th Cir. 2000). The fact that a third party may incidentally benefit under the contract does not confer on him the right to sue; instead, the parties must have intended to benefit the third party. *Id.* at 1211 (9th Cir. 1999). Whereas "intended" beneficiaries to a contract enjoy judicially-enforceable rights under the contract, "incidental" beneficiaries acquire no rights under the contract. *See id.* at 1210. To prove intended beneficiary status, "the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Id.* at 1211.

Here, the contract under dispute contains no provisions that demonstrate an intent by the contracting parties to benefit Peck. In this case, the Grove Policy is a contract between Cincinnati, the HOA, and Block 22, and the unambiguous language of the Grove Policy names the HOA and Block 22 as its sole insureds. Peck contends that the Grove Policy intends to confer standing on her through the Condominium Declaration. However, the contract at issue is the Grove Policy, not the Condominium Declaration. Since, there is nothing in the Grove Policy suggesting an intent to make Peck a third-

party beneficiary to the policy, Peck does not have standing to assert a claim against Peck under the Grove Policy.

Additionally, the representatives of both Block 22 and the HOA testified that they have each been paid all amounts due under the Grove Policy. Therefore, all named insureds under the Grove Policy have agreed that Cincinnati has fulfilled any and all obligations under that contract.

Accordingly, the Court will grant summary judgment in favor of Cincinnati on claims founded under the Grove Policy.

### B.    Breach of Contract – Peck Policy

Peck submitted three claims under the Peck Policy. To date, Cincinnati has paid Peck $180,529.94. This includes $80,000.00 for ALE, the limit under the Peck Policy, and $100,529.94 for personal property loss. Cincinnati maintains that this is the full amount owed under the Peck Policy. It is Plaintiff's burden to prove that there is some amount owed that Cincinnati has not paid. *See Brawner v. Pearl Assur. Co*., 267 F.2d 45, 46 (9th Cir. 1958) (holding that claimant had the "burden of proving not only that she had sustained a loss, but also in what amount").

Plaintiff has completely failed to meet this burden. Specifically, Peck has not provided evidence to support the contention that Cincinnati owes additional amounts, if any, under the Peck Policy. Rather, Peck has provided unsupported factual assertions regarding the procedures taken by Cincinnati and its affiliates. Statements in a brief, unsupported by admissible evidence, cannot be used to create an issue of fact. *Barnes v. Indep. Auto. Dealers,* 64 F.3d 1389, 1396 n. 3 (9th Cir.1995). There is simply no

evidence in the record that the payments made are less than what was owed under the terms of the Peck Policy.  Failure to establish the amounts allegedly unpaid but owed renders these claims deficient as a matter of law. *See id.* As such, the Court will grant summary judgment in favor of Cincinnati on this claim.

### C.    Bad Faith

Peck alleges that Cincinnati acted in bad faith by denying, withholding, or delaying payment of amounts due to her (Dkt. No. 1-1, ¶ 36).

To maintain a bad faith claim premised on unreasonable delay, Peck must prove all of the following: "(1) that coverage of her claim was not fairly debatable; (2) that she had proven coverage to the point that based on the evidence the insurer had before it, the insurer intentionally and unreasonably withheld her benefits; (3) that the delay in payment was not the result of a good faith mistake; and (4) that the resulting harm was not fully compensable by contract damages." *Robinson v. State Farm Mut. Auto. Ins. Co., 45 P.3d 829, 834* (Idaho 2002).

An insurer does not act in bad faith if it declines to pay sums that are reasonably disputed. *Id.* "Rather, a claim for bad faith arises only where an insurer intentionally denies or delays payment, even though the insured's claim is not fairly debatable." *Id.* "The term 'fairly debatable' means that at the time the claim was under consideration, there existed a legitimate question or difference of opinion over the eligibility, amount or value of the claim." *Id.* at 833-34. Moreover, delay in paying an insurance claim does not rise to the level of bad faith "unless the company delayed, intending to achieve delay for delay's sake." *Rice*, 2006 WL 3523538 at *6 (quoting *Roper v. State Farm Mut. Auto.*

*Ins. Co.*, 958 P.2d 1145, 1148 (Idaho 1998) (no bad faith where delay was anything other than an "honest mistake")).

The Court finds that Peck has failed to allege facts sufficient to establish a triable issue as to Cincinnati's bad faith. First, Peck cannot demonstrate that Cincinnati intentionally and unreasonably denied or withheld any payment owed to her. Peck's Opposition lacks any evidence that Cincinnati behaved unreasonably or in contravention of industry custom and practice. Cincinnati provides substantial evidence that it processed the claim with reasonably expediency under the circumstances and that factors outside of its control—lack of cooperation, the extraordinarily complex nature of the claims, and delays caused by others—were responsible for any delays. Peck provides only unsupported, conclusory statements in response. Second, Peck has not provided any evidence which indicates how the mold limit was incorrectly applied and not "fairly debatable." Again, statements in a brief, unsupported by admissible evidence, cannot be used to create an issue of fact. *Barnes*, 64 F.3d at 1396 n. 3 (9th Cir.1995).

Therefore, Peck has not met her burden of establishing a claim for bad faith. As such, the Court will grant summary judgment in favor of Cincinnati on this claim.

### D.    Negligence

Cincinnati also seeks summary judgment on Peck's that Cincinnati had a duty to reasonably and fairly investigate and adjust Plaintiff's claim, and that Defendant breached this duty by failing and refusing to properly remediate the loss. Cincinnati claims that Peck's action for negligent delay in settling her claims is "little more than an effort to turn a breach of contract case in to a tort case."

To establish a claim for negligent adjustment, Peck must establish the following basic elements: "(1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." *Reynolds v. American Hardware Mut. Ins. Co.*, 766 P.2d at 1246-47. A mere breach of contract will not support a tort cause of action. *Selkirk v. State Ins. Fund*, 22 P.3d 1028, 1031 (Idaho 2000). Therefore, an independent tort action arises only where the insured can show bad faith—that the insurer intentionally or unreasonably denied or withheld payment and as a result of the insurer's conduct, the plaintiff was harmed in a way not fully compensable by contract damages.

Because Plaintiff's bad faith claim fails, it follows that her negligence claim based on the same facts similarly fails. Peck provides no evidence that Cincinnati's denial was based on carelessness or mistake. Moreover, as discussed above, Peck provides no evidence that Peck unreasonably delayed the settlement of her claims. The Court will therefore grant summary judgment as to this claim as well.

## E.     Estoppel

Cincinnati seeks summary judgment on Peck's claim that Cincinnati's false representations about the mold limitation estop defendant from seeking to enforce that provision.

Plaintiff must establish four elements to establish a claim for equitable estoppel: "1) there must be a false representation or concealment of a material fact made with actual or constructive knowledge of the truth; 2) the party asserting estoppel did not and

could not have discovered the truth; 3) there was intent that the misrepresentation be relied upon; and 4) the party asserting estoppel relied upon the misrepresentation or concealment to his or her prejudice." *Sorensen v. Saint Alphonsus Reg'l Med. Ctr., Inc.*, 118 P.3d 86, 91 (Idaho 2005).

Ms. Peck does not contest the fact that the Peck Policy included a mold limitation upon execution. Complaint at 5, 13–14, 49, 50, Dkt. 1-2; *see also* SOF 4; Peck EUO at 127, 128, Dkt. 35-1. Rather, she alleges that she relied on Cincinnati's false representations that the Policy provided coverage for mold damage and that her reliance was reasonable because Cincinnati did not impose a policy mold limitation on the HOA claim. Complaint at 10-11, Dkt. No. 1-1.

Ms. Peck cannot establish that she "did not and could not have discovered the truth" regarding the policy limitation. "The rule in Idaho is well established that a party's failure to read a contract will not excuse his performance." *Irwin Rogers Ins. Agency v. Murphy*, 833 P.2d 128, 131 (Idaho Ct. App. 1992). The only recognized exception to the duty to read requires proof of a "fraud which would have prevented a reasonable person from reading the contract sought to be avoided." *Id*. Ms. Peck makes no allegation that she was prevented or dissuaded from reading the Policy by Cincinnati. If Peck failed to read her contract of insurance, "[she] may not later complain . . . that [s]he did not understand its contents." *Id*. (internal quotation omitted). Whether or not she read the policy, Ms. Peck is "estopped by [her] own negligence to deny" knowledge of its terms. *Id*.

Peck cannot prove, under any set of facts, that she lacked knowledge of the express language of the Peck Policy. As such, the Court will grant summary judgment in favor of Cincinnati on this claim.

> **2.    Plaintiff's Motion for Leave to Amend to Add a Claim for Punitive Damages**

Plaintiff seeks leave to file an amended complaint containing a claim for punitive damages against Defendant, Cincinnati Insurance Company (Dkt. 32).

A claim for punitive damages is substantive in nature and accordingly controlled by Idaho law. *See Strong v. Unumprovident Corp.*, 393 F. Supp. 2d 1012, 1025 (D. Idaho 2005). Before a plaintiff can recover punitive damages, he or she must be entitled to legal or equitable relief. *Boll v. State Farm Mut. Auto. Ins. Co.*, 92 P.3d 1081, 1088 (Idaho 2004) (citing *Payne v. Wallace*, 32 P.3d 695, 700 (Idaho 2001)). I have dismissed on summary judgment plaintiff's substantive claims and the relief being sought thereunder. Because no substantive claims remain, plaintiff's request to amend the complaint to add a claim for punitive damages is rendered moot. *See McGilvray v. Farmers New World Life Ins. Co.*, 28 P.3d 380, 387 (Idaho 2001).

## ORDER

**IT IS HEREBY ORDERED:**

1.   Defendants' Motion for Summary Judgment (Dkt. 33) is **GRANTED** as to all claims.

2.   Plaintiff's Motion for Leave to Amend to Add a Claim for Punitive Damages (Dkt. 32) is **DENIED as MOOT**.

3.  The Court will enter a separate judgment in accordance with Fed. R. Civ. P.

    58.

DATED: September 30, 2016

B. Lynn Winmill
Chief Judge
United States District Court